DISCIPLINARY COUNSEL *v.* MCAULIFFE.

[Cite as *Disciplinary Counsel v. McAuliffe*,

121 Ohio St.3d 315, 2009-Ohio-1151.]

*Judges — Misconduct — Federal convictions for crimes involving arson, fraud, and conspiracy — Respondent disbarred.*

(No. 2008-1200 — Submitted August 26, 2008 — Decided March 19, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 05-037.

_____

**Per Curiam.**

{¶1} Respondent, Don S. McAuliffe, Attorney Registration No. 0014629, formerly of Pickerington, Ohio, was admitted to the practice of law in Ohio in 1972 and became a judge of the Fairfield County Municipal Court in 1997. The Board of Commissioners on Grievances and Discipline found that McAuliffe violated the Code of Professional Responsibility and the Code of Judicial Conduct by burning down his house in order to defraud an insurance company, committing several federal felonies in the process. The board recommended McAuliffe's permanent disbarment. McAuliffe objects to the board's report and recommendations. We overrule the objections and order that McAuliffe be permanently disbarred.

**The Criminal and Disciplinary Proceedings against McAuliffe**

{¶2} In 2003, the Grand Jury for the United States District Court for the Southern District of Ohio indicted McAuliffe on two counts of mail fraud, one count of use of fire to commit mail fraud, one count of conspiracy to use fire to commit mail fraud, and two counts of money laundering. McAuliffe was found

guilty of these offenses on February 13, 2004, and was sentenced on December 16, 2004.

{¶3} On January 24, 2005, we suspended McAuliffe's license to practice law pursuant to Gov.Bar R. V(5)(A)(4) (automatic interim suspension for felony conviction). *In re McAuliffe*, 104 Ohio St.3d 1455, 2005-Ohio-235, 821 N.E.2d 572.

{¶4} Later that year, relator, Disciplinary Counsel, filed a complaint charging McAuliffe with violating two canons of the Code of Judicial Conduct and four provisions of the Code of Professional Responsibility. However, the parties notified the Board of Commissioners on Grievances and Discipline that McAuliffe had filed an appeal of his convictions. Pursuant to Gov.Bar R. V(5)(C), the board stayed the disciplinary proceeding pending the conclusion of the criminal appeal.

{¶5} After successfully appealing his sentence, McAuliffe was resentenced on December 20, 2005. As part of his sentence, McAuliffe was fined $150,000 and ordered to make restitution to the Grange Insurance Company in the amount of $235,000, plus interest. McAuliffe paid both amounts.

{¶6} McAuliffe also appealed the judgment of conviction, but to no avail; the United States Court of Appeals for the Sixth Circuit affirmed his convictions and sentences on June 22, 2007. *United States v. McAuliffe* (C.A.6, 2007), 490 F.3d 526. The United States Supreme Court denied McAuliffe's petition for certiorari on October 15, 2007, concluding the appellate review of McAuliffe's case. See *McAulife* [sic] *v. United States* (2007), __ U.S. __, 128 S.Ct. 442, 169 L.Ed.2d 309.

{¶7} After the board lifted its stay of this disciplinary matter, a panel of the Board of Commissioners on Grievances and Discipline held a hearing on April 10, 2008. McAuliffe stipulated that he had been convicted of the crimes charged in the federal indictment, even while claiming to be innocent of those

charges. He specifically declined to present any mitigating evidence at the hearing, on the ground that presenting such evidence would be inconsistent with his protestations of innocence.

{¶8} At the hearing, McAuliffe, through counsel, informed the panel that he intended to collaterally attack his convictions by filing a motion to vacate, set aside, or correct his sentence under Section 2255, Title 28, U.S.Code, a provision that authorizes procedures and remedies for attacks on criminal sentences. (After the hearing, McAuliffe did in fact file such a motion, pro se, in the federal district court.) McAuliffe asked the panel to stay the proceeding and continue his indefinite suspension "until the conclusion of all his legal proceedings, including the [Section 2255] motion." In the alternative, he asked that the panel "certify" questions of law to this court concerning whether a judge convicted of a felony could receive a punishment other than disbarment.

{¶9} Despite McAuliffe's refusal to offer evidence of mitigation, the panel found that mitigating factors did exist. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The panel cited McAuliffe's lack of a record of previous discipline, the fact that he made restitution to his victim, and his cooperation in the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a), (c), and (d).

{¶10} However, the panel also noted that McAuliffe had acted with a dishonest and selfish motive, had committed multiple offenses, has refused to acknowledge the wrongfulness of his conduct, and had made restitution only when ordered to do so. See BCGD Proc.Reg. 10(B)(1)(b), (d), and (g). Finally, the panel noted that McAuliffe was a judge when he committed his crimes and thus brought disrepute to the judicial system and breached the public trust. See Canons 2 and 4 of the Code of Judicial Conduct.

**{¶11}** The panel found that McAuliffe had violated DR 1-102(A)(3) (prohibiting illegal conduct involving moral turpitude), 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting conduct prejudicial to the administration of justice), and 1-102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law) and two provisions of the Code of Judicial Conduct: Canon 2 (a judge shall comply with the law at all times) and Canon 4 (a judge shall avoid impropriety). The panel recommended that McAuliffe be disbarred, and the board adopted the panel's findings of fact, conclusions of law, and recommendation.

**{¶12}** McAuliffe has filed objections to the board's report and recommendations. His first objection challenges the panel's decision not to stay the disciplinary proceedings pending the disposition of his Section 2255 motion. His second challenges the panel's denial of his request to "certify" questions of law to this court. His third challenges the recommendation of disbarment.

### McAuliffe's First Objection

**{¶13}** In his first objection, McAuliffe contends that the board erred by denying his request that the disciplinary proceeding be stayed until the conclusion of his Section 2255 proceeding collaterally attacking his conviction.

**{¶14}** Gov.Bar R. V(5)(C) provides: "Any disciplinary proceeding instituted against a justice, judge, or an attorney based on a conviction of an offense * * * shall not be brought to hearing until all *appeals* from the conviction * * * are concluded." (Emphasis added.)

**{¶15}** In *Bar Assn. of Greater Cleveland v. Steele* (1981), 65 Ohio St.2d 1, 19 O.O.3d 120, 417 N.E.2d 104, we applied the virtually identical language of former Gov.R. V(8)(c).[1] The respondent in *Steele* was convicted of first-degree

---

1. "Any disciplinary proceeding instituted against an attorney based upon a conviction of an offense shall not be brought to hearing until all appeals from the conviction are concluded." Former Gov.R. V(8)(c), quoted in *Steele*, 65 Ohio St.2d at 2, 19 O.O.3d 120, 417 N.E.2d 104.

murder. After the respondent exhausted his appeals, the board held a hearing in his case and recommended his disbarment. The respondent argued that the disciplinary proceeding should have been deferred until final determination of his then pending federal habeas corpus petition.

{¶16} We rejected this argument as inconsistent with the language of the applicable rule: "The board complied with the foregoing rule by staying the instant proceeding until respondent's appeals were exhausted. A proceeding in habeas corpus is not an appeal from a criminal conviction; rather, it is a distinct collateral attack upon the petitioner's continued confinement." Id., 65 Ohio St.2d at 2, 19 O.O.3d 120, 417 N.E.2d 104.

{¶17} McAuliffe's proceeding pursuant to Section 2255, although not a habeas corpus action, is still a collateral attack on his conviction. See, e.g., *United States v. Addonizio* (1979), 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805; *Danforth v. Minnesota* (2008), __ U.S. __, 128 S.Ct. 1029, 1041, 169 L.Ed.2d 859, fn.16. Hence, like the habeas proceeding in *Steele*, the Section 2255 proceeding is not an appeal within the meaning of Gov.Bar R. V(5)(C). Here, as in *Steele*, "[t]he board complied with the * * * rule by staying the instant proceeding until respondent's appeals were exhausted." *Steele*, 65 Ohio St.2d at 2, 19 O.O.3d 120, 417 N.E.2d 104. Under the rule, the board had no obligation to delay McAuliffe's hearing yet further, pending the conclusion of the Section 2255 proceeding.

### McAuliffe's Second Objection

{¶18} McAuliffe's second objection is that the panel erred by denying his request that it "certify" questions of law to this court. Essentially, McAuliffe sought to raise the issue whether, in light of our decision in *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 693 N.E.2d 1078, a judge who has been convicted of a felony involving moral turpitude may receive any punishment other than disbarment.

{¶19} Curiously, McAuliffe contends that *Gallagher requires* disbarment in such circumstances. His complaint appears to be that because *Gallagher* clearly requires his disbarment, there was no point in his presenting mitigating evidence to the panel.

{¶20} Unfortunately, McAuliffe fails to take the next step and explain how this set of premises leads to the conclusion he asks us to reach: that the board should have suspended its proceedings in order to seek a ruling from this court as to whether the panel could recommend an indefinite suspension despite *Gallagher*. If, as McAuliffe contends, *Gallagher* clearly requires his disbarment, there was surely no reason for the board to "certify" any questions about it to us, even assuming that the Disciplinary Rules authorize such a procedure.

{¶21} In any event, McAuliffe cites no authority for the proposition that a panel may (let alone *must*) request an advisory opinion from this court during a disciplinary proceeding. The way to raise an issue of law in a disciplinary proceeding is not to "certify" it to this court in midproceeding, but simply to *raise* it – first to the panel, then to the board, and finally to us. Thus, the panel committed no error by denying McAuliffe's request, and we overrule his second objection.

### Disciplinary Violations

{¶22} Based on the record, we find that McAuliffe violated DR 1-102(A)(3), 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6) and Canons 2 and 4 of the Code of Judicial Conduct.

{¶23} Although McAuliffe continues to deny having committed the crimes the jury found him guilty of, "a disciplinary proceeding is not an appropriate forum in which to collaterally attack a criminal conviction." *Bar Assn. of Greater Cleveland v. Chvosta* (1980), 62 Ohio St.2d 429, 430, 16 O.O.3d 452, 406 N.E.2d 524. The record of this case contains judgment entries reflecting McAuliffe's federal criminal convictions, and McAuliffe has stipulated both to

the fact of his convictions and to the authenticity of the judgment entries. The judgment entries of conviction are conclusive evidence that McAuliffe committed the federal crimes in question. *Disciplinary Counsel v. Woods* (1986), 28 Ohio St.3d 245, 247, 28 OBR 325, 503 N.E.2d 746.

{¶24} "[P]roof of a criminal conviction is generally not conclusive of the issue of moral turpitude, which requires consideration of all the circumstances surrounding the illegal conduct." *Disciplinary Counsel v. Burkhart* (1996), 75 Ohio St.3d 188, 191, 661 N.E.2d 1062.

{¶25} The crimes McAuliffe was convicted of involved arson, fraud, and conspiracy. Evidence at McAuliffe's federal trial showed that McAuliffe conspired with a business partner to burn down McAuliffe's house so that McAuliffe could collect the insurance proceeds. McAuliffe tried twice to have the house set on fire and succeeded on the second try. He then signed and submitted to the insurance company claim forms that contained false statements. On the claim forms, McAuliffe stated that the house was not destroyed " 'because of any act or design on [his] part' "; that " '[n]othing ha[d] been done to conceal or misrepresent any material facts concerning this claim, nor to deceive the company' "; and that he did not know the cause and origin of the fire. McAuliffe and the company ultimately settled his claim for $235,000, which McAuliffe spent. Pursuant to the settlement, McAuliffe signed and submitted another form falsely stating that he did not know the origin of the fire. *McAuliffe*, 490 F.3d at 530, 537-538.

{¶26} On these facts, we agree that McAuliffe's crimes involved moral turpitude. His greed and mendacity manifest the "lack of social conscience and depravity beyond any established criminal intent," *Burkhart*, 75 Ohio St.3d at 191, 661 N.E.2d 1062, that establishes moral turpitude.

## Sanction

**{¶27}** Finally, we consider the appropriate sanction for the disciplinary violations in this case. McAuliffe objects to the board's recommendation of disbarment and requests that we impose an indefinite suspension instead. However, he presents no explanation as to why he deserves an indefinite suspension.

**{¶28}** We have considered the mitigating factors identified by the board. However, given our finding that McAuliffe's conduct involved moral turpitude, we find our words in *Gallagher* apposite here:

**{¶29}** "Mitigating factors have little relevance * * * when judges engage in illegal conduct involving moral turpitude. * * * When a judge's felonious conduct brings disrepute to the judicial system, the institution is irreparably harmed. * * * By this sanction, we aim to protect both the public and the integrity of the judicial system itself. Mitigating factors relevant to this individual attorney pale when he is viewed in his institutional role as a judge. We, therefore, find that respondent deserves the full measure of our disciplinary authority." *Gallagher*, 82 Ohio St.3d at 53, 693 N.E.2d 1078.

**{¶30}** We adopt the findings and conclusions of the board. Respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

David J. Graeff, for respondent.

_____