Lanzinger, J.,
dissenting.
{¶ 27} I do not see how the majority can square a sanction of a mere indefinite suspension with its statements that “[t]his court has stated that judges are held to the highest possible standard of ethical conduct,” majority opinion at ¶ 16, citing Mahoning Cty. Bar Assn. v. Franko, 168 Ohio St. 17, 23, 151 N.E.2d 17 (1958), and Disciplinary Counsel v. Hoskins, 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324, ¶ 42, and that “ ‘ “judges are held to higher standards of integrity and ethical conduct than attorneys or other persons not invested with the public trust,” ’ ” majority opinion at ¶ 20, quoting Disciplinary Counsel v. O’Neill, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 57, quoting Shaman, Lubet & Alfini, Judicial Conduct and Ethics 2 (3d Ed.2000).
{¶ 28} I disagree that Bridget McCafferty’s case should be distinguished from other cases in which a judge has been disbarred. She has been convicted of a felony, as were the judges in Disciplinary Counsel v. Mosely, 69 Ohio St.3d 401, 632 N.E.2d 1287 (1994); Disciplinary Counsel v. Gallagher, 82 Ohio St.3d 51, 693 N.E.2d 1078 (1998); and Disciplinary Counsel v. McAuliffe, 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209.
{¶ 29} We are to consider all the circumstances surrounding her conduct in determining what sanction should be imposed for these disciplinary violations. See BCGD Proc.Reg. 10(B); Hoskins at ¶ 79. McCafferty was convicted on multiple counts of lying to FBI agents about conversations with people who were the, subject of a county-wide corruption investigation. Those conversations, which the FBI intercepted, revealed that she had used or intended to use her influence in cases in her courtroom to advance the interests of Frank Russo, Jimmy Dimora, and a local businessman. This misconduct strikes at the very heart of the judiciary.
{¶ 30} And it is not conduct that we can ignore, as the majority opinion attempts to do. The majority focuses solely on McCafferty’s conversation with FBI agents and paints her conduct as a one-time, brief lapse in judgment. This narrow characterization is simply untrue; McCafferty’s misconduct was more prolonged and more egregious than the majority admits. Months before she ever spoke to the FBI, McCafferty was swaying judicial outcomes for political associates and giving special consideration to high-ranking politicians. There can be no dispute that this conduct occurred. McCafferty’s criminal indictment outlined her involvement with Dimora and Russo, and she stipulated, at her disciplinary hearing, to engaging in the conduct described in the indictment. Even without *237 this clear stipulation, her convictions alone would still establish an irrebuttable presumption that this particular misconduct occurred. See Gov.Bar R. V(5)(B). We must therefore presume that she grossly abused her judicial position for political favor.
Douglas N. Godshall, Eugene P. Whetzel, and Joseph S. Kodish, for relator.
Montgomery, Rennie & Jonson, George D. Jonson, and Kimberly Vanover Riley, for respondent.
{¶ 31} There can also be no dispute that this misconduct is part of the case before us. The disciplinary complaint specifically charged McCafferty with violations of Jud.Cond.R. 1.3 (“A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so”) and Jud.Cond.R. 2.4 (“A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge’s judicial conduct or judgment”). Both of these rule violations relate to her abuse of office and her involvement with Russo and Dimora. It therefore makes no sense for the majority to claim that McCafferty’s misuse of her position is “not part of the instant case.” Majority opinion at ¶ 7. If it formed the basis for her rule violations — violations that the majority upholds — then it is clearly part of this case and we must consider it in imposing our sanction.
{¶ 32} We have stated that “[wjhen a judge’s felonious conduct brings disrepute to the judicial system, the institution is irreparably harmed,” and the judge deserves “the full measure of our disciplinary authority.” Gallagher, 82 Ohio St.3d at 53, 693 N.E.2d 1078. If the primary purposes of judicial discipline are to protect the public, guarantee the evenhanded administration of justice, and to bolster public confidence in the institution, then nothing short of disbarment should be imposed in this case.
O’Connor, C.J., and French, J., concur in the foregoing opinion.